UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| MICHAEL D. BRIGGS, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNUM LIFE INSURANCE COMPANY | ) |
| OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

## **COMPLAINT**

COMES NOW Plaintiff, Michael D. Briggs, and for his claims and causes of action against Defendant, Unum Life Insurance Company of America, states:

## PARTIES

1. Michael D. Briggs ("Briggs") is a resident and citizen of the State of Missouri.

2. Unum Life Insurance Company of America ("Unum) is an insurance company authorized to do business in the State of Missouri.

## JURISDICTION AND VENUE

3. Briggs brings his claim pursuant to the Employee Retirement Income Security Act ("ERISA") and 29 U.S.C. § 1001 *et seq*.

4. This dispute is governed by a welfare benefits plan and its policy documents, as well as applicable federal law regarding employer provided benefits. 29 U.S.C. § 1132(e)(1).

5. This Court also has subject matter jurisdiction pursuant to the general jurisdictional statute for civil actions arising under federal law. 28 U.S.C. § 1331.

6. Venue lies in the Western District of Missouri under 29 U.S.C. § 1132(e)(2), as the breach occurred in this district, and because the welfare benefits plan is administered in this district.

7. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events

1

and/or omissions giving rise to this action occurred within this judicial district.

## INFORMATION REGARDING TRIAL

8. No jury trial is allowed under ERISA law.

## STATEMENTS OF FACT

9. Since 2015, Dickinson Financial Corporation ("DFC") employed Briggs.

10. DFC employed Briggs as an internal auditor.

11. Briggs's occupation involved a range of exertional and non-exertional duties.

12. DFC sponsored a group welfare benefits plan for its participating employees ("Plan").

13. The Plan constitutes an employee welfare benefit plan as defined by 29 U.S.C. § 1002(1).

14. The Plan offered a number of benefits, including long-term disability ("LTD") benefits.

15. At all relevant times, Briggs has been a Plan participant and covered person.

16. DFC is the administrator of the Plan.

17. DFC delegated to Unum the function of issuing benefit claim determinations.

18. Unum's group insurance policy ("Policy") articulates the conditions that covered Plan participants must satisfy to receive LTD benefits.

19. The Policy defines "Disability" as:

> You are disabled when Unum determines that:
>
> - you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and
> - you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.
>
> After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the material and substantial duties of any **gainful occupation** for which you are reasonably fitted by education, training or experience.

20. "Regular Occupation" is defined as:

2

> **REGULAR OCCUPATION** means the occupation you are routinely performing when your disability begins. Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location.

21. The Policy also limits payment of benefits to 24 months for disabilities resulting from mental illness and self-reported symptoms. However, the Policy states that the mental illness limitation does not apply to dementia if it is a result of stroke, trauma, viral infection, Alzheimer's disease, or other conditions that are not usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment.

22. The Policy defines "Mental Illness" as:

> **MENTAL ILLNESS** means a psychiatric or psychological condition classified in the Diagnostic and Statistical Manual of Mental Health Disorders (DSM), published by the American Psychiatric Association, most current as of the start of a disability. Such disorders include, but are not limited to, psychotic, emotional or behavioral disorders, or disorders relatable to stress. If the DSM is discontinued or replaced, these disorders will be those classified in the diagnostic manual then used by the American Psychiatric Association as of the start of a disability.

23. The Policy defines "Self-Reported Symptoms" as:

> **SELF-REPORTED SYMPTOMS** means the manifestations of your condition which you tell your physician, that are not verifiable using tests, procedures or clinical examinations standardly accepted in the practice of medicine. Examples of self-reported symptoms include, but are not limited to headaches, pain, fatigue, stiffness, soreness, ringing in ears, dizziness, numbness and loss of energy.

24. In 2017, Briggs suffered a stroke-like incident. He returned to work, ultimately using leave under the Family Medical Leave Act.

25. On July 6, 2018, Briggs ceased working due to cognitive impairments, speech dysfunction, a sleep disorder, and tremors.

26. Neurologist John Harlan, MD, prescribed Donepezil, a cognitive-enhancing medication, to treat Briggs' impairment.

27. Briggs has not worked for DFC or any other employer from July 6, 2018, through the

3

present.

28. Briggs became disabled due to a combination of medical impairments that prevented him from performing his Regular Occupation and Any Gainful Occupation.

29. Briggs sought short-term disability benefits administered by Unum. Unum approved Briggs' claim in full, finding him disabled from July 17, 2017 through October 15, 2018.

30. Briggs applied for LTD benefits through the Unum Policy.

31. On October 17, 2018, Unum approved Briggs' LTD claim.

32. Prior to approving Briggs' LTD claim, Unum reviewed Briggs' social media presence, including Facebook and LinkedIn.

33. Following approval of Briggs' claim, Unum advised that Briggs was required to apply for Social Security Administration benefits.

34. Unum referred Briggs to Genex, a third-party Social Security disability advocacy group with which Unum has a longstanding relationship.

35. On October 31 and November 8, 2018, Briggs underwent neuropsychological testing with Terri L. Price, PhD. On exam, he was restless in his arms and hands. He required extra time to use his hands for evaluation exercises. His processing speed and response time were slow. His affect was characterized as flat. Dr. Price assessed a mild neurocognitive disorder.

36. Unum periodically requested updated information from Briggs and his medical providers.

37. On January 29, 2019, Briggs advised Unum he had misplaced forms required as part of Unum's ongoing updates.

38. On February 14, 2019, Genex advised Unum it had filed a Social Security disability claim on Briggs' behalf.

39. On April 22, 2019, Dr. Harlan and his certified medical assistant offered an opinion in

support of Briggs' claim. They opined Briggs' memory impairment had rendered his skills marginal.

40. On April 22, 2019, family medicine physician John Shockley, MD, opined Briggs could not perform his occupational demands on a full-time basis due to cognitive issues and tremors.

41. On May 3, 2019, Unum concluded Briggs was "not a feasible candidate for [return to work] services at this time."

42. On or about May 6, 2019, Unum again reviewed Briggs' social medial presence. Briggs' Facebook page stated he had "semi-retired because of disability." Unum also searched LexisNexis for Briggs' employment activity.

43. On May 16, 2019, Unum employee medical consultant F. William Black, Ph.D., reviewed Briggs' medical records and concluded there was no evidence of a consistent pattern of cognitive improvement or decline since 2017.

44. On May 16, 2019, Unum employee medical consultant Wesley D. Johnson, MD, reviewed Briggs' medical records and Dr. Black's findings. Dr. Johnson concluded Briggs remained disabled from his own occupation.

45. By May 17, 2019, due to Briggs' cognitive impairment, Genex had not successfully coordinated the complete filing of a Social Security disability claim on Briggs' behalf. However, Briggs did successfully initiate a claim thereafter.

46. Briggs received treatment from different medical professionals in 2019. Treatment notes indicated he continued to suffer from a cognitive impairment and hand tremor.

47. On December 26, 2019, Patrick Lowry, MD, offered an opinion in support of Briggs' claim.

48. On January 28, 2020, Unum concluded that Briggs' vocational and medical profile warranted continuation of benefits.

5

49. On July 29, 2020, Vikrant Joshi, MBBS, reviewed Briggs' medical evidence and concluded that disability was not supported beyond 24 months.

50. On October 2, 2020, Unum advised Briggs it would not pay benefits beyond 24 months. Unum concluded that Briggs' claim was subject to the Policy's mental illness limitation.

51. On or about October 22, 2020, Briggs appealed Unum's decision terminating LTD benefits.

52. On October 26, 2020, Unum acknowledged Briggs' appeal.

53. Briggs submitted additional evidence, including opinions from multiple medical professionals who opined that Briggs was functionally limited and disabled by conditions that were not mental illnesses.

54. On January 21, 2021, Megan M. Yeaton, RN, BSN, reviewed Briggs' medical records. Yeaton did not find that the records supported functional limitations.

55. On February 8, 2021, Unum issued its final decision denying Briggs' claim.

56. Unum's final decision indicated Briggs was capable of performing his Regular Occupation.

57. Briggs has exhausted administrative remedies.

58. Unum has paid no benefits beyond October 15, 2020.

59. Briggs remains Disabled as defined by the Policy.

## CAUSES OF ACTION
## COUNT I
## 29 U.S.C. § 1132(a)(1)(B) – WRONGFUL DENIAL OF BENEFITS

60. Briggs realleges the preceding paragraphs as if fully set forth herein.

61. Briggs is entitled to all unpaid and accrued LTD benefits, as Unum:

    a. Made an unfavorable decision without substantial evidence;

    b. Failed to consider each of Briggs's medical impairments and their resulting limitations;

    c. Mischaracterized and ignored medical records and opinions;

d. Mischaracterized Briggs's complaints, symptoms, medical conditions, abilities, and functional limitations;

    e. Relied on consultants without the sufficient training, expertise, or specialty to fully evaluate each of Briggs's impairments;

    f. Failed to perform a reasonable occupational and vocational review;

    g. Issued an unfavorable decision that was arbitrary and capricious.

62. Pursuant to 29 U.S.C. § 1132(a)(1)(b), Briggs is entitled to an award of actual damages for losses suffered.

63. Pursuant to 29 U.S.C. § 1132(g), judgment may include compensation for a beneficiary's attorney's fees, costs, and prejudgment interest.

64. Unum has not satisfied its obligation to pay Briggs LTD benefits.

65. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(g), Briggs prays for judgment against Unum for unpaid LTD, attorney's fees, costs, and prejudgment interest.

## COUNT II
## 29 U.S.C. § 1132(a)(3) – BREACH OF FIDUCIARY DUTY

66. Briggs realleges the preceding paragraphs as if fully set forth herein.

67. Under 29 U.S.C. § 1002(21)(A), a fiduciary is one who:

    "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

68. 29 U.S.C. § 1104(a)(1)(A) describes the fiduciary standard of care:

    "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii)

7

defraying reasonable expenses of administering the plan."

69. As the Plan's designated claims administrator and entity exercising discretion in claims administration, Unum is a fiduciary.

70. Briggs participated in and benefitted from the Plan as previously indicated.

71. As the payor of benefits and the entity responsible for benefits determinations Unum operates under an inherent structural conflict of interest.

72. A higher than marketplace quality standard, as set forth in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 (2008) governs Unum's actions as a fiduciary.

73. In failing to adequately and reasonable apply the Policy's applicable provisions, including each component of the definitions of "Disability," "Mental Illness," and "Regular Occupation," Unum breached its fiduciary duties.

74. Unum did not identify the types of evidence necessary to satisfy Unum's interpretation of the Policy's definition of "Disability." Unum's conduct is inconsistent with 29 CFR § 2560.503-1(g)(1)(iii) and is evidence of its breach of fiduciary duty.

75. On August 1, 2019, Unum requested that Briggs see a psychiatrist and a therapist. In doing so, Unum directed Briggs to obtain treatment consistent with Unum's plan to invoke the Policy's Mental Illness limitation. In doing so, Unum breached its fiduciary duty.

76. LINA erroneously considered Briggs' cognitive impairment to constitute a "Mental Illness." In structuring and developing its review around that error, Unum breached its fiduciary duty.

77. In its use of a biased third-party vendor to recruit medical consultants, Unum breached its fiduciary duty.

78. In its use of in-house, employee medical consultants, Unum breached its fiduciary duty and obligation to provide an independent review of Briggs' claim.

79. Unum failed to ask Briggs to undergo an Independent Medical Exam, as authorized by the Policy. In doing so, Unum breached its fiduciary duty.

80. Unum's review was inconsistent with its own guidelines and procedures. Its claims handlers did not comply with documented instructions involving the administration of disability claims and vocational reviews. In failing to comply with its internal guidelines and claims processing procedures, Unum breached its fiduciary duty.

81. Unum did not compensate and use its medical and vocational consultants for the exclusive purpose of providing benefits to Plan participants. Nor did it do so for the purpose of defraying reasonable expenses in administering the Plan. Rather, Unum contracted with these consultants for the purpose of denying benefits, compensating them at rates that did not comport with its duty to defray reasonable expenses. This conduct is indicative of a breach of Unum's fiduciary duty.

82. Unum denied Briggs's LTD benefits for the purpose of elevating its financial interests. In doing so, it breached its fiduciary duty.

83. Unum failed to discharge its duties solely in the interests of its participants and beneficiaries. It acted with both a conflict of interest and breached its fiduciary duty to both Briggs and the Plan's participants and beneficiaries generally.

84. Additionally, Unum's repeated improper conduct demonstrates that ordinary relief under 29 U.S.C. § 1132(a)(1)(B) is not an adequate remedy.

85. Unum's violations of regulations alone allow Briggs the right to pursue any remedy under Section 502(a) of ERISA, including 29 U.S.C. § 1132(a)(3). 29 C.F.R. § 2560.503-1(l)(2)(i).

86. Unum's violations of federal regulation also subject its decision to *de novo* review.

87. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(3), § 1109, and § 1132(a)(2); Briggs prays

for an order that Unum retrain its employees consistent with ERISA fiduciary obligations and federal regulations; for reformation of its services agreement with the Plan administrator consistent with ERISA fiduciary obligations and federal regulations; for an injunction preventing further unlawful acts by Unum in its fiduciary capacity; for an equitable accounting of benefits that Unum has withheld; for the disgorgement of profits enjoyed by Unum in withholding benefits; for restitution under a theory of surcharge; for the Court's imposition of a constructive trust; for an award of attorney fees; for an equitable order prohibiting Unum from the use of biased third-party vendors; for an equitable order removing Unum as the administrator of claims; and for further relief as the Court deems just.

Respectfully submitted,

BURNETTDRISKILL, ATTORNEYS

By: /s/ Derrick Pearce
Derrick Pearce, Mo. #42793
Kyle H. Sciolaro, Mo. # 64568
103 W 26th Ave., Ste. 290
Kansas City, MO 64116
P: 816.781.4836
F: 816.792.3634
dpearce@burnettdriskill.com
ksciolaro@burnettdriskill.com
ATTORNEYS FOR PLAINTIFF